## STRAHORN-HUTTON-EVANS COMMISSION COMPANY V. M. H. LACKEY ET AL.

### Delivered November 6, 1897.

**1.  Pleading—Counterclaim—Breach of Contract—Special Damages.**

A counterclaim based on the failure of plaintiff to advance the amount of a loan, and claiming loss of profits from defendant's inability to complete a contract for the purchase of cattle and one for the resale thereof to a specified person at an advanced price, is obnoxious to a special exception, if not to a general demurrer, where it fails to allege that the parties contemplated at the time of the agreement for the loan that the defendant might sell the cattle to such person at an advance, or that the advance represented the market price.

**2.  Same.**

An answer which sets up a counterclaim for loss of profits sustained by defendant because of his inability to complete a contract for the purchase of cattle and another contract for the resale thereof at a profit, by reason of the plaintiff's failure to advance him the money on a loan at the time agreed, is obnoxious to special exceptions, where it does not state the terms of the contracts of purchase and resale with reference to the time of delivery, so as to negative his ability to perform such contracts, notwithstanding the plaintiff's failure.

APPEAL from the County Court of Haskell.  Tried below before Hon. J. M. BALDWIN.

*Jas. R. Robinson* and *H. G. McConnell*, for appellant.—The counterclaim was too vague, indefinite, and uncertain.  Wells v. Fairbanks, 5 Texas, 81; Sedg. on Meas. of Dam., sec 1261; Railway v. Darnell, 62 Texas, 639.

*J. H. Glasgow*, for appellee.

TARLTON, CHIEF JUSTICE.—The appellee M. H. Lackey was indebted to the appellant in the principal sum of $443.84, as a balance due upon a note executed by him to the appellant, bearing date August 7, 1895, in the principal sum of $2000, and due six months after date. This indebtedness was secured by a chattel mortgage of the same date as the note on certain cattle.

In this action, brought by the appellant to recover its debt and to foreclose its mortgage, the appellee Lackey, by a verdict of the jury and judgment thereon, canceled the foregoing indebtedness, with a recovery against the appellant in the sum of $1 and costs.  This verdict and judg-

ment rests upon a counterclaim asserted by the appellee, the nature of which he thus substantially discloses by the allegations of his special answer.

That on August 7, 1895, the defendant M. H. Lackey contracted with the plaintiff company for a loan of $4000, evidenced by two certain promissory notes, each for the sum of $2000. One of these notes is the instrument sued on; the other bears the date August 17, 1895; each of these notes being secured by a separate chattel mortgage, the mortgage to secure the latter note being dated August 22. That at the time the defendant executed the notes and mortgages to secure the loan of $4000, plaintiff well knew and understood that the defendant was borrowing the money to invest at once in steer cattle at then existing prices, for the purpose of obtaining the profit by the sale of such cattle as he should purchase. That when he contracted the loan, three and four-year-old steers were selling at a price ranging from $17.50 to $24 per head, as plaintiff knew. That the plaintiff furnished the appellee $2000 of the money contracted for on the 7th day of August, well knowing at the time that the money so furnished was to be applied to making part payments on the purchase of steer cattle, and at the same time plaintiff well knew and understood that the last $2000 was desired by defendant to finish paying out his purchase made with the first $2000. That relying on the promises of the plaintiff to furnish the last $2000 on or about the 17th day of August, the defendant did, "on the 9th day of August, 1895, purchase from Finn Reynolds 64 head of steer cattle, at $24 per head, paying a part down on said cattle; and at the same time purchased 30 head of steer cattle from Gregg & Whitney, at $23 per head, paying a part down on the same; and at the same time purchased 35 head of cattle from Watt Middleton, at about an average of $20 per head. That on or about the 20th day of August defendant was offered by John Lackey (who then had money to purchase 800 head of cattle to feed) for those cattle purchased from Reynolds, Gregg & Whitney, and Middleton, the sum of $30 per head all round, and defendant did then and there by binding contract sell said cattle to said Lackey, and had so contracted and sold them to said John Lackey, and would have perfected sale of them to him had it not been that plaintiff failed to furnish the last $2000 with which to finish paying out the cattle so purchased. That said cattle were not then fat and ready for the market, and defendant was selling them to John Lackey for feeding purposes, and had plaintiff furnished the money as per contract, defendant would have paid out and have made by the sale to Lackey $6 per head on the cattle purchased from said Reynolds," or $384 on that purchase, and $7 per head on the cattle purchased from Gregg & Whitney, or $210 on that purchase, and $10 per head on the purchase from Middleton, amounting to $350 on that purchase. That the plaintiff did not furnish the defendant the last $2000 until the 12th day of September, 1895. That at the time the cattle were purchased from Reynolds, Gregg & Whitney, and Middleton, they were unfit for market, and the defendant, after diligent effort, was not able to sell said cattle

as feeders to anyone else, after his failure to sell to Lackey, and was compelled to feed said cattle so purchased, in order to prepare them for market, and did so feed said cattle for about five months, and then put them upon the market fat and in good shape, and used every effort to sell same, and the price of cattle having fallen, he only received for said cattle the sum of $20 per head, losing on the Reynolds cattle $5 per head, and on the Gregg & Whitney cattle $5 per head, and on the Middleton cattle $5 per head, making a total loss of $635 on account of depreciation in price. That after paying them out the defendant could not sell the cattle for feeders, and was compelled to feed them, in order to prepare them for market, at a cost of $350; the total loss to the defendant consisting in $985. That the cattle were put upon the market as soon as they were fat enough. That defendant would not have contracted for the money or any part of it, if he had not believed at the time that it would have been furnished him according to contract. That he would not have accepted and made use of the last $2000 received by him from plaintiff, had he not been compelled so to do to avoid a forfeiture of all that he had paid out of the first $2000 on the cattle already purchased. That he used every effort to borrow sufficient money to pay out the cattle purchased from Reynolds, Gregg & Whitney, and Middleton, so as to sell them to Lackey, but that he could not do so, for the reason that the plaintiff had all his collateral tied up for the money furnished and to be furnished under the contract.

Upon these allegations, the defendant prayed a recovery as damages in the sum of $944, representing the profits which would have accrued to him had he made the sale to John Lackey, a sufficient amount of which he asked to be set off against the plaintiff's claim, to cancel it, with a judgment of $100 over against the plaintiff. He prayed in the alternative if he was denied a recovery of these profits, for judgment in the sum of $985, representing the loss above described, to the extent of canceling the plaintiff's claim, and with a judgment over in the sum of $100.

These allegations analyzed, it appears that the loss sustained by the appellee was due to a failure on the part of the appellant from the 17th day of August to the 12th day of September to loan to him the sum of $2000. The disastrous consequences portrayed by him, consisting in the loss of profits, occurred during the short period intervening between the dates mentioned. It is manifest that the loss of these profits was not the natural or necessary result of the failure to furnish the $2000 at the date mentioned. Hence the damages were not such as the law implies, and constitute what are known as special damages. It was hence necessary to plead that, when the appellant contracted to furnish the $2000 by the 17th day of August, 1895, it had knowledge of such facts as would reasonably indicate that, if it did not comply with this agreement, the loss of profits would probably result to the appellee such as he describes as a consequence of his failure to sell the cattle in question to John Lackey. Express Co. v. Darnell, 62 Texas, 641.

And hence it was also necessary, in response to special exception, that

the appellee should allege specifically the terms of his contracts with his several vendors and with his vendee, to the end that the court might adjudge whether in fact he was prevented from completing his sale with John Lackey. Thus, the defendant's answer discloses that the aggregate price of the cattle purchased on the 9th day of August, 1895, by the appellee from the divers parties named was $2926, and that upon these cattle he paid the sum of $2000 which had been advanced to him by the appellant, leaving a balance of $926. It does not appear at what date he was entitled to a delivery of the cattle from these vendors. If he was entitled to an immediate delivery, the allegations of the defendant fail to disclose what prevented him from immediately transferring the cattle to his proposed vendee John Lackey, and from thus realizing his anticipated profits—paying to his vendors out of the money received from Lackey, and which he was ready, willing, and able to pay, the small balance due on the purchase to them.

So, the answer fails to allege when, under the terms of the proffered purchase by Lackey, the latter was to be entitled to the delivery of the cattle. If they were not to be delivered to him until after the 12th of September, when the last $2000 was actually furnished to the defendant, then it would appear that the defendant was not deprived by the plaintiff's act of selling the cattle to Lackey.

The plaintiff specially excepted to the allegations describing the contract between the defendant and the divers vendors, Reynolds, Gregg & Whitney, and Middleton, because the answer failed to specify the terms of this contract definitely and specifically, in that it failed to show where the contract was made, when, where, and how it was to be performed, how much money was paid on the contract in cash, how much, when and where the balance, if any, of the money was to be paid, and when and where the cattle purchased under the contract were to be delivered. So, the plaintiff specially excepted to the allegations in reference to the contract between the appellee and John Lackey, in that these allegations failed to state when thereunder the cattle were to be delivered.

We think the court erred in overruling these special exceptions. On general demurrer, extending to the pleading every reasonable intendment, it would probably be sufficient, in the aspect of the case here considered, to allege that the sale to Lackey was prevented by the failure of the plaintiff to furnish the last $2000; but when by special exception the defendant is called upon to show how the failure to furnish this money was attended with results so disastrous, we think he should have been required to state specifically the terms of the contracts under which his rights arose, so that the court could conclude from the facts stated by him, and not from his deductions, whether he had sustained the injuries complained of, on account of the omission on the part of the plaintiff to furnish him $2000 on the 17th of August. Even on general demurrer, it is difficult to perceive how, under his averments, the defendant, having paid $2000 on cattle worth $2926, and having immediately thereafter found a purchaser who was ready, able, and will-

ing to purchase these cattle at an advanced price of $944, could have been prevented from receiving from his proposed purchaser a sufficient sum to satisfy the comparatively small balance of $926 due to his vendors, and transferring to his vendee, John Lackey, in this case, the cattle wholly unincumbered.

These conclusions require a reversal of the judgment, but in view of another trial, we deem it proper to consider—though not necessary to decide—the sufficiency of the answer as against a general demurrer, the overruling of which is complained of.

The appellee alleges that on the 7th day of August, when the appellant contracted to furnish him the last $2000, it had knowledge that he "was borrowing the money to invest at once in steer cattle at then existing prices, for the purpose of obtaining the profit by the sale of such cattle as he should purchase;" but he does not allege that this contract contemplated that he should or might within thirteen days thereafter sell the cattle to John Lackey at the advanced prices therein mentioned, unless it be said that such advanced prices represented the market value then prevailing of cattle of the kind and quality mentioned. On the contrary, his allegations rather negative the inference that these cattle could be sold at so advanced a price to anyone other than John Lackey. Consequently, may it not be said that the defendant was permitted to charge the plaintiff with the loss of profits which he would have made out of a special contract with John Lackey, without alleging that such a contract was in the contemplation of himself and the plaintiff at the time of the agreement to furnish the $2000 in question; or without such allegations as would justify the inference that the special contract was of such character as was contemplated at that time?

To charge the plaintiff with the advanced price in the cattle which was offered by John Lackey, was it not necessary to allege that this price was in accordance with the usual market rates at that time prevailing? 2 Sedg. on Dam., 8 ed., p. 631. And applying the principles already announced, does it not appear, in the absence of such averment, that the profits sought to be recovered were brought within the contemplation of the plaintiff who was charged with them. Certainly the omission indicated would subject the plea to assault by special exception. Whether so, upon general demurrer, we need not determine, as upon another trial the appellee can by amendment cure this defect, if the facts will justify it.

For the reasons indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*